# TERRIN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TERRY FABRICANT, on behalf of himself and others similarly situated, | : :  CIVIL ACTION FILE NO. |
| Plaintiff, | : : |
| v. | : **COMPLAINT – CLASS ACTION** : |
| PRIORITY PAYMENT SYSTEMS HOLDINGS, LLC, PRIORITY PAYMENT SYSTEMS, LLC, BRIAN JENKINS, and ASSISTED ALTERNATIVE MERCHANT STRATEGIES LLC, | : : **JURY TRIAL DEMANDED** : : : : |
| Defendants. | : : |

## Preliminary Statement

1. Plaintiff Terry Fabricant ("Plaintiff" or "Mr. Fabricant") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Fabricant alleges that Priority Payment Systems, LLC ("Priority Payment") along with its parent holding company, Priority Payment Systems Holdings, LLC ("Priority Holdings") commissioned automated telemarketing calls to Mr. Fabricant and other putative class members without their prior express written consent.

3. These calls were made pursuant to an arrangement between Priority Payment and Assisted Alternative Merchant Strategies LLC ("Merchant Strategies"), a vendor for Priority Payment and its telemarketer, Mr. Brian Jenkins, who operated the automatic telephone dialing equipment.

4. Mr. Fabricant and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Fabricant brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Priority Payment and Priority Holdings.

5. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Terry Fabricant currently resides in Southern California.

7. Defendant Priority Payment Systems, LLC is a domestic limited liability company with its principal place of business at 2001 Westside Parkway, Suite 155, Alpharetta, GA, 30004.

8. Defendant Priority Payment Systems Holdings, LLC is a domestic limited liability company with wits principal place of business at 2001 Westside Parkway, Suite 155, Alpharetta, GA, 30004.

9. Defendant Brian Jenkins is an individual residing in New Jersey. Mr. Jenkins engaged in nationwide automated telemarketing on behalf of Priority Payment for Merchant Strategies, including in this District. Mr. Jenkins also entered into an agreement with Priority Payment on behalf of Merchant Strategies in this District.

10. Defendant Assisted Alternative Merchant Strategies LLC is a New York limited liability company with offices at 110 Wall Street in New York, NY 10005. Merchant Strategies engaged in nationwide automated telemarketing on behalf of Priority Payment, including in this District and entered into a contract with Priority Payment in this District.

## Jurisdiction & Venue

11.	This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one Class member from a different state.

12.	The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

13.	The Court has personal jurisdiction over Priority Payment and Priority Holdings because of their registration with the State of Georgia. In addition, both Priority Payment and Priority Holdings maintain their principal place in Georgia.

14.	The Court has personal jurisdiction over Mr. Jenkins and Merchant Strategies because they engaged in nationwide telemarketing conduct, including into this District. Furthermore, they both entered into a contractual relationship with Priority Payments in this District.

15.	Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as

the automated calls were commissioned into this District and because the Defendants reside in this District.

## TCPA Background

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

18. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found,

5

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

20. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

21. The TCPA provides for individual liability when an agent or employee directly participated in, or personally authorized, the violative conduct.

6

22. This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

23. Here, Mr. Jenkins operated the automatic telephone dialing equipment that made calls to the Plaintiff and to the putative class members.

### Factual Allegations

<u>Priority Holdings Is Liable For Illegal Telemarketing Conducted By Or On Behalf Of Priority Payment</u>

24. Priority Holdings owns and controls Priority Payment.

25. Priority Holdings' officers and directors direct and control the business strategy and daily operations of Priority Payment and exert operational control over Priority Payment.

26. Priority Holdings' officers and directors direct and control Priority Payment's sales and marketing strategy, including the use of illegal telemarketing calls.

27. On information and belief, Priority Holdings and Priority Payment arbitrarily allocate funds between and amongst themselves. Priority Holdings pays

7

routine expenses for Priority Payment, performs accounting services for Priority Payment, and reports Priority Payment's earnings and losses to its shareholders.

28. Further, Priority Holdings and Priority Payment share assets, revenues, and access to capital.

29. Priority Holdings and Priority Payment manifest a unity of business interest and operate under the single trade name, Priority Payment.

30. Priority Payment manifests no separate corporate interests of its own and functions solely to achieve the business purposes and strategy of Priority Holdings.

31. Priority Payment performs services sufficiently important to Priority Holdings that absent Priority Payment, Priority Holdings would perform those services itself.

Call to Mr. Fabricant

32. Mr. Fabricant is a "person" as defined by 47 U.S.C. § 153(39).

33. Mr. Fabricant's telephone number, (818) 266-XXXX, is registered to a cellular telephone service.

34. Mr. Fabricant has also placed this telephone number on the National Do Not Call Registry.

35. Mr. Fabricant was called by Mr. Jenkins on September 24, 2018.

8

36. When Mr. Fabricant answered the call, there was a distinctive click and a pause.

37. This click and pause is a telltale sign of a predictive dialer.

38. The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

39. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

40. A predictive dialer is an ATDS as that term is defined by the TCPA.

41. Because of the predictive dialer, Mr. Fabricant said "hello" several times and then finally a live person came on the line.

42. Eventually, Mr. Jenkins appeared on the telephone line and using a scripted sales pitch, asked Mr. Fabricant if he wanted to switch payment processing companies.

43. Mr. Jenkins then sent an e-mail to Mr. Fabricant that stated:

> Good Afternoon Terry,
>
> Like I told Tracey on the phone, my company has a great relationship with Priority Payment Systems. All we need is a monthly cc processing statement and I will be able to beat your current rate. I am going to give the owner, Douglas Mocik 732-372-0470 your number as well, he is

9

going to reach out to you.

44. The "Douglas Mocik" mentioned in the e-mail is an employee of Priority Payment, as the calls made by Mr. Jenkins were made to sell Priority Payment goods and services.

45. In fact, Mr. Mocik himself then sent an e-mail directly to Mr. Fabricant which stated, "As Brian mentioned, we would like the opportunity to review a recent processing statement for you…is there a time for us to speak?".

46. Mr. Fabricant was not interested, and so he did not respond.

47. Mr. Fabricant is not a customer of any of the Defendants and has not consented to receive telemarketing calls prior to the receipt of these calls.

48. Unfortunately, Mr, Fabricant's experience with Priority Payment is not unique.

49. In fact, the website NomoRobo, awarded and recognized by the Federal Trade Commission for its work identifying spam callers, has marked calls from this number as spam robo calls. *See* https://www.nomorobo.com/lookup/646-866-6910 (Last Visited November 14, 2018).

50. Other call recipients have also complained about calls from this number. *See* http://no-more-calls.com/646-866-6910/ ("Based on the 28+ complaints we found online, it's probably a scam.") (Last Visited

November 14, 2018); https://www.showcaller.global/us/+16468666910 ("Around 100% of people reported it as "Spam". 646-866-6910 is located in United States…646-866-6910 has been searched 66 times and reported 17 times.") (Last Visited November 14, 2018).

51. Mr, Fabricant and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Mr. Fabricant and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Mr. Fabricant and the class.

**Priority Payment's Liability for Merchant Strategies' Conduct**

52. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

53. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any

violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

54. In fact, the Federal Communication Commission has instructed that sellers such as Priority Payment may not avoid liability by outsourcing telemarketing to third parties, such as Merchant Strategies:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

55. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for

violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

57. 56. Priority Payment is liable for the Merchant Strategies telemarketing calls.

57. First, Priority Payment hired Merchant Strategies to originate new business using automated telemarketing calls.

58. In fact, Priority Payments is copied in the initial e-mail from Mr. Jenkins and Merchant Strategies that follows the automated telemarketing calls.

59. From there, Priority Payments attempts to finalize the sale.

60. Furthermore, Priority Payment could have restricted Merchant Strategies, and the third parties it worked with, from using automated telemarketing, but it didn't.

61. Priority Payment knew (or reasonably should have known) that Merchant Strategies was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators would,

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

62. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

63. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

64. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Priority Payment and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Priority Payment's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

65. Excluded from the Class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

66. The Class as defined above is identifiable through phone records and phone number databases.

67. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

68. Plaintiff is a member of the Class.

69. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

70. Plaintiff's claims are typical of the claims of class members.

71. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

72. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

73. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

74. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Call provisions

75. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

76. The Defendants violated the TCPA by (a) initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

77. The Defendants' violations were willful and/or knowing.

### Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or a automated voice;

C. Because of Defendants' violations of the TCPA, Plaintiff Fabricant seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

17

D.  An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.  Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

## CERTIFICATION OF COUNSEL

I hereby certify in accordance with U.S.D.C. N.D. Ga. Local Rule 7.1D that the foregoing CLASS ACTION COMPLAINT has been prepared using Times New Roman, 14-point font, as required in U.S.D.C. N.D. Ga. Local Rule 5.1C.

Case 1:18-cv-09936-HSJ Document 163 Filed 11/20/18 Page 18 of 19

Dated: November 20, 2018    TERRY FABRICANT, on behalf of himself and others similarly situated,

By:

**THE KOVAL FIRM, LLC**

*s/ Steven H. Koval*
Steven H. Koval
Georgia Bar No. 428905
3575 Piedmont Road
Building 15, Suite 120
Atlanta, GA 30305
Telephone: (404) 513-6651
Facsimile: (404) 549-4654
shkoval@aol.com